GENEROSO ZAYAS HERNÁNDEZ ET AL., Plaintiffs and Appellants, v. JUAN ORRACA MARTÍNEZ ET AL., Defendants and Appellees.

No. 11397.   Resubmitted December 11, 1957.—Decided May 21, 1958.

---

[11] 33 L.P.R.A. § 821;  *People* v. *Bocanegra*, 27 P.R.R. 810.

*Pedro E. Anglade* and *Guillermo Cintrón Ayuso* for appellants.
*Víctor M. Pons* for appellees.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The main issue in this appeal is the sufficiency of a complaint seeking a declaration of nonexistence of a certain summary mortgage foreclosure proceeding, predicated on the alleged nullity of the mortgage contract on which it was based.

The complaint was filed on April 28, 1952, in the former District Court, Caguas Section. The facts set forth in the first and main cause of action are, briefly stated, as follows:

By public deed executed on August 17, 1928, Encarnación Hernández Ramos and three of her children named Generoso, Alfonso, and Etelvina Zayas Hernández, constituted a particular civil partnership of profits, for agricultural purposes, for a period of ten years, which would operate under the firm name of "Sociedad Agrícola Zayas"; the seat of its domicile would be in the ward of Beatriz of

the municipality of Cidra; Encarnación Hernández Ramos contributed to the partnership capital her share of one half of eleven rural properties situated in that ward and her three children contributed their share of one eighth of such properties each; Generoso Zayas Hernández was designated as manager or managing partner, but, for the purposes of encumbering, mortgaging, or alienating the real property belonging to the partnership, in addition to Generoso, the other partners, Encarnación Hernández Ramos and Alfonso and Etelvina Zayas Hernández, were designated as agents.

At the time the partnership was constituted, Etelvina Zayas Hernández was married to Lucas Yon Rodríguez, who appeared in the deed in order to give his consent for its constitution. On September 3, 1929, the partnership, represented by all its partners and agents, Etelvina Zayas Hernández included, constituted a voluntary mortgage on "the partnership property" in favor of Lucas Yon Rodríguez, husband of the managing partner Etelvina Zayas Hernández, to secure the payment of the sum of $9,448.90 and additional credits for interest, costs, expenses, and attorney's fees. The mortgage deed was recorded in the Registry of Property; in August 1939, Lucas Yon Rodríguez and his wife, Etelvina Zayas Hernández, assigned the mortgage to Agapito Vázquez, who in turn assigned it to Juan Orraca Martínez, both assignments having been recorded.

When the mortgage credit became due, Juan Orraca Martínez filed a summary mortgage foreclosure proceeding in the former District Court of the Judicial District of Caguas against "Sociedad Agrícola Zayas," which culminated in the adjudication in his favor of all the shares originally contributed to the partnership.

The partnership was dissolved, at the expiration, on August 17, 1938, of the term of its constitution which was not extended. Encarnación Hernández Ramos died, and was succeeded by the plaintiffs, Generoso, Alfonso, and Etelvina Zayas Hernández, and her other son, Jacinto Zayas

Hernández, who was joined nominally as a codefendant in this action.

The grounds for requesting a declaration of nonexistence and absolute nullity of the said mortgage foreclosure proceeding are the following:

I. "That in the alleged mortgage contract to which reference has already been made the place for making payment was not specified, and the payment had to be made in the domicile of the debtor in Barrio Beatriz of Cidra, Puerto Rico; and that the initial writing does not contain any averment that the plaintiff, in his own right or by his lawful attorney in fact, appeared personally in the domicile of the debtor partnership to receive or to collect the alleged mortgage credit on its due date.

II. "The plaintiffs contend that the alleged deed, which purported to constitute a mortgage in favor of Lucas Yon Rodríguez, had no such effect and is void and nonexistent from the time it was executed, inasmuch as Etelvina Zayas Hernández, one of the agents of the said Sociedad Agrícola Zayas and who, as disclosed by the deed of constitution of partnership, was married to Lucas Yon Rodríguez when Sociedad Agrícola Zayas was constituted and was still married to the said Lucas Yon Rodríguez, the alleged mortgagee, when the said deed was executed, appeared for the purpose of constituting a mortgage in her own favor and acquiring, for herself and for the conjugal partnership constituted by the said Lucas Yon Rodríguez and Etelvina Zayas Hernández, an alleged mortgage right in the properties belonging to her principal, Sociedad Agrícola Zayas, wherefore the alleged mortgage deed was not recordable in the Registry of Property; and neither Lucas Yon Rodríguez nor Agapito Vázquez nor Juan Orraca Martínez acquired a mortgage right in the properties belonging to the said Sociedad Agrícola Zayas; and, consequently, that if Juan Orraca Martínez had acquired any right, which we deny, the most he acquired by that deed was a dubious scriptory credit which is not recoverable by a summary foreclosure proceeding."

The second cause of action is a subsidiary claim against the foreclosing creditor for fruits received or which were not received since either shares in the property were sold at public auction.

Orraca Martínez filed a motion to dismiss the complaint alleging that (a) "it did not state facts sufficient to constitute a cause of action; (b) it did not state facts sufficient to constitute a cause of action because the action of nullity was based on the alleged nullity of the mortgage, and the said mortgage would not be void but merely voidable, since the action seeking its annulment had prescribed pursuant to § 1253 of the Civil Code of Puerto Rico; and (c) that it did not state facts sufficient to constitute a cause of action for damages as to the second cause of action because it had prescribed, in accordance with § § 1864 and 1869 of that Code."

On December 30, 1953, the Superior Court, Caguas Part, held that the complaint did not state facts sufficient to constitute a cause of action and that the action for the annulment of the mortgage foreclosure proceeding predicated on the nullity of mortgage, if it did exist, had prescribed; and it granted to the plaintiffs a period of 10 days to amend the complaint, if susceptible of amendment. The complaint was not amended within that period and the court, on motion of Orraca Martínez, rendered judgment on April 26, 1954 dismissing the complaint.

The plaintiffs took the present appeal assigning two errors.

(1) In the first assignment they maintain that the lower court erred in concluding that the mortgage contract entered into by the partnership, represented by all its partners and agents, as mortgagor, and Lucas Yon Rodríguez, as mortgagee, was valid because Etelvina Zayas Hernández, wife of the original creditor, intervened in constituting a lien as "one of the agents of the partnership and signer of the deed, as it appears from the deed as well as from the fifth paragraph of the complaint." [1]

---

[1] The partnership deed has not been made a part of the record on appeal, nor is its content inserted, in whole or in part, in the complaint; nor does it appear from the allegations that it was submitted to the

The trial court held that the mortgage contract was not void because § 1348 of the Civil Code, second paragraph, merely prohibits the agent from acquiring *by purchase* the property the administration or sale of which may have been entrusted to him, and the contract challenged was a mortgage contract executed by all the partners and agents.

In so holding the court acted correctly. As a general rule of capacity, § 1346 of that Code provides that "A contract of purchase and sale may be executed by all persons who, according to this Code, are authorized to bind themselves, excepting the modifications contained in the following sections." Among the modifications of the capacity to acquire by purchase enumerated in § 1348 is that of the agent in connection with the properties which at the time of the sale are under his administration or are subject to his power to sell them. This prohibition renders impossible the self-contracting or contracting with one's self and produces a special or relative incapacity. Such provision constituting an exceptional and prohibitive matter—established for the benefit of the owner so as to overcome any difficulty in presenting proof of fraud or deceit on the part of the administrator—should be restrictively construed and can not be extended, even by analogy, to embrace persons and things not included therein.[2]

Such relative incapacity may be correctly applied provided two requirements are met: first, that the agent at the execution of the sale act in the dual capacity of vendor, bearing another's representation, and of purchaser in his own

---

trial court. In cases such as this, which may be disposed off definitively by the courts on motions for dismissal, and of whose essential facts there is normally authentic proof in the judicial records, notarial protocols, and registries of property, it would be advisable, for the sake of a better judgment, if the parties—at least the moving party—should furnish the court with proper certificates showing relevant antecedents of fact not revealed by the allegations.

[2] *Vázquez* v. *Martínez*, 17 P.R.R. 1091, 1101 (1911); *Martínez* v. *Reg. of San Germán*, 26 P.R.R. 494, 496 (1918); *Silva Brothers & Co.* v. *Reg. of San Juan*, 28 P.R.R. 164 (1920).

and personal right; and, second, that the contract so executed produce the final and irrevocable conveyance in favor of the purchaser.[3]

However, in order not to thwart the underlying principle of morality and conscience of this restricted prohibition of the capacity to acquire by purchase—which at law can refer only to an agent having express attributes to perform acts strictly of dominion and not to a mere administrator—and even though it should not be construed as being extendible, the prohibition may be extended to every juridical act or contract considered equal to a sale in its transmissive, definitive, and irrevocable effects, such as the giving in payment, the promise to sell, the exchange, the assignment of credits, rights and actions, the reservative annuity, and the compromise.[4] A mortgage contract can never be regarded as having the efficacy of a conveyance; the mortgagor—the principal in this case—has at hand the means to render invalid the security for the payment of what is due, any contract of forfeiture being legally proscribed. For this reason, the sales with right of redemption are excluded from the reach of the technical obstacle created by § 1348.[5]

■ On the authority of the doctrine announced by this Supreme Court in *Mancheño* v. *Le Brun et al.*, 14 P.R.R. 461; *Silva Brothers & Co.* v. *Reg. of San Juan*, 28 P.R.R. 164; *Oxios* v. *Registrar*, 39 P.R.R. 404, and *Zalduondo Mier Co.* v. *Reglero & Castrillo*, 44 P.R.R. 611, the trial court concluded that, assuming that the prohibition contained in § 1348 extends to the mortgage contract challenged, such prohibition could not be considered void because it was con-

---

[3] Judgments of June 17, 1920 and March 10, 1953 of the Supreme Court of Spain.

[4] Sections 1146, 1340, 1416, 1428–31, 1499, and 1709–15, Civil Code. *Cf. Durán et al.* v. *Registrar*, 20 P.R.R. 138; *Delgado* v. *Monroig*, 57 P.R.R. 462; Judgments of December 12, 1899 and November 12, 1907, of the Supreme Court of Spain.

[5] Judgment of June 17, 1920 of the Supreme Court of Spain.

sented to by all the parties, even if it was executed in favor of one of them directly. Appellants admit that that conclusion is correct, but they maintain that the real ground invoked against the validity of the contract is the assumption of fact referred to in § 1347, that is, that this case involves a deed in which Etelvina Zayas Hernández appears "to encumber by mortgage the properties belonging *to her* within said partnership in favor of her husband, Lucas Yon Rodríguez."

This contention is without valid reasoning. Section 1347 *supra* provides that the husband and the wife can not mutually *sell* property *to each other*. Nowhere in the complaint is it alleged that Etelvina Zayas Hernández *sold* property to her husband Lucas Yon Rodríguez. The property which she, together with her mother and her two brothers, mortgaged to her husband belonged to the juridical entity known as Sociedad Agrícola Zayas. This case does not involve a general partnership of profits in which all the properties, personal or real, which each partner owns at the time of executing the contract, continue to be their separate property, only the usufruct passing to the partnership. Section 1566, Civil Code.

When the Sociedad Agrícola Zayas was constituted, the separate ownership of one eighth of the eleven rural properties belonging to Etelvina Zayas Hernández became partnership property, this partner having simultaneously acquired a right of credit—personal property—corresponding to her actual contribution and to her rights in the earnings or liabilities of the partnership.

Regarding third parties—such as Orraca Martínez in this case—that is, observing the partnership relations from the outside or in their ultimate purpose, the separation between the partnership property and the individual or separate property of each partner is considered absolute, since

the partnership contribution is the only guarantee of the creditors of the entity.[6]

■ The partnership represented by all its partners —and among them the wife of Lucas Yon Rodríguez, who contributed only a small share to the partnership fund—was the one that became the mortgagor, guaranteeing a debt whose legality or existence is unquestionable. *Cf. Oxíos* v. *Registrar, supra*, at 407. It was alleged in the complaint that in the partnership deed Generoso Zayas Hernández, a partner, was designated administrator, but that, for the purpose "of encumbering, mortgaging, or alienating real property, the other partners, Encarnación Hernández widow of Zayas, Alfonso, and Etelvina, the latter being married to Lucas Yon Rodríguez, were designated as agents of the partnership to carry out those transactions, in addition to Generoso Zayas Hernández."

Since the managing partners could not act without the mutual consent of each other, the concurrence of all the partners was necessary to render valid the execution of the mortgage security, and the concurrence of Etelvina Zayas Hernández, as coadministrator, could not be dispensed with, even if the guarantee was executed in favor of the legal conjugal partnership between the latter and the mortgagee and this circumstance were deemed to be an obstacle for its execution. In these cases of administrative solidarity the concurrence of all the administrators is compulsory and indispensable, and the absence or disability of anyone of them cannot be alleged unless there should be imminent danger of a serious or irreparable injury to the partnership.[7]

---

[6] See annotation entitled "*Naturaleza Jurídica de la Aportación Social*" by Roca Sastre, 179 Revista General de Legislación y Jurisprudencia 143, April 1946.

[7] Section 1585 of the Civil Code provides:

"In case it should have been agreed that some of the managing partners are not to act without the consent of the others, the consent of all shall be necessary for the validity of the acts; and the absence or

We find no analogy between the facts of the present case and those in *Delgado* v. *Monroig*, 57 P.R.R. 462, cited by the appellants, in which it is held that a private contract between husband and wife providing for the division of the community property after judgment is rendered in an action for divorce between them, was not binding as being contrary to the provisions of § 1347.

■■ There are, in our judgment, other grounds for dismissing the complaint. There is no allegation that co-agents Encarnación Hernández Ramos and Generoso and Alfonso Zayas Hernández, owners of the greater part of the partnership capital, have no capacity to execute the mortgage guarantee. On the other hand, and assuming that the prohibition contained in § 1348 extends to the mortgage contract, the relative nullity of the mortgage in question was cured by the implied ratification thereof by coappellant Etelvina Zayas Hernández in August 1930, when she and her husband, Lucas Yon Rodríguez, assigned the mortgage credit to Agapito Vázquez.[8]

---

incapacity of any one of them can not be alleged unless there should be imminent danger of a serious or irreparable injury to the partnership."

In *Oxíos* v. *Registrar*, 39 P.R.R. 404, 410, it was held:

"The spirit of section 1597(1) is to give life to the firm and to make it responsible to the outside world for any of the acts of its managing partners. There is nothing in that section that makes it wrong for a partner to acquire firm property with the consent of all the partners. If section 1362 be examined it will be noticed that its spirit is to prevent frauds and in the particular case to protect principals or the public from tortious acts of their agents. It never was the intention of the Legislature to prevent a firm, when all the partners consent, from doing what it deemed best for its own interests and in any form, as contemplated by section 1360, *supra*. There is no suggestion of fraud and the public registries should not be closed because of such a possibility."

[8] In his article *"El Autocontrato en el Derecho Privado Español,"* published in Vol. 151 of Revista de Legislación y Jurisprudencia 393–94, in referring to § 1459 of the Spanish Civil Code, counterpart of § 1348 of our Code, professor Federico de Castro says, among other things, what follows:

"*a*) In case of express authorization of the principal.—It seems that, notwithstanding such authorization, the purchase will be void nonetheless for the following reasons: chapter II is entitled 'capacity

If for the purposes of that assignment Etelvina Zayas Hernández considered valid the mortgage contract and received and enjoyed its fruits, she cannot validly attack her own acts. See *Heirs of González* v. *Federal Land Bank*, 51 P.R.R. 454, 457. It would not be fair to apply the extreme penalty of nullity, to the prejudice of a third party fully protected, almost 23 years after the constitution of the mortgage credit which was the object of the foreclosure proceeding.

(2) As second and last error,[9] the appellants maintain that the lower court erred in holding that the action had prescribed. Again they are wrong. The court correctly held that the action had prescribed.

The appellants argue that the four-year statute of limitations was not applicable because the mortgage contract was not merely voidable but "wholly nonexistent, because of the parties' incapacity to execute the same. . . ."

Assuming that § 1348 prevents the agent from constituting in his own behalf a mortgage guarantee on the properties of his principal which are under his control and subject to his power to encumber them, and that the agent does in fact infringe that legal provision by encumbering

---

to purchase or sell'; therefore, the persons mentioned in § 1459 shall be disqualified to purchase; it is a special provision of the contract of sale which repeals any other general provision; it is a compulsory provision, not repealable by the will of the contracting parties.

"*b*) In case of ratification.—Even if it is void, the purchase will produce all its effects if ratified expressly or impliedly, for it meets all the requirements of § 1261 (§ § 1310 and 1311). It agrees with and is ratified by the provisions of § 1259, which accepts as valid a void contract which has been ratified and it operates validly, according to the authorities, from the moment of its execution. (Judgment of May 7, 1897. Order of July 25, 1905.)"

[9] The first ground for requesting the declaration of nullity of the mortgage foreclosure proceeding, as already stated, is the failure to allege in the original complaint that the foreclosing creditor "appeared personally at the domicile of the debtor partnership to receive and collect the alleged mortgage credit when it became due." The trial court decided this point adversely to the plaintiffs, but the latter do not complain on appeal of the ruling on this point.

such properties in his behalf, would such act be nonexistent or absolutely void, or would it be relatively void? In our opinion, we would be dealing with an act relatively void or voidable.

In his treatise on *"Derecho Civil Español, Común y Foral,"* Vol. 3, 8th ed. 1954, Castán says at p. 440:

"III. *Voidableness or relatively void.—* 1. *Definition.*—Unlike absolutely void, which implies such faultiness in a contract as to render it incapable, *ipso jure,* of producing its proper effects, voidableness means milder fault—derived, above all, from certain defects of capacity or will—which gives rise to an action of nullity or of challenge, which, if successfully prosecuted, produces the destruction of the act with retroactive force.

"This type of nullity is governed by Ch. VI, Tit. II, Book IV of the Civil Code, entitled 'Nullity of Contracts,' the first section of which § 1300, reads as follows: 'Contracts entered into with all requisites mentioned in Article 1261 may be *annulled,* even if there be no lesion to the contracting parties, whenever they are subject to any of the vices which invalidate them in accordance with law.' "

The purpose of declaring a contract voidable is solely to protect a contracting party who has been the victim of his own inexperience, or of error, violence, or fraudulent management. The power to annul a contract is an optional right, the purpose of which is to render ineffective a compulsory relation. Such right may be exercised only by bringing in due time an action of nullity, whose limitation period is four years. Section 1253, Civil Code. Not until it is declared void by the court, a voidable contract has all the effects proper to a valid act.

It is obvious that the mortgage contract involved in this action meets all the essential requirements of consent, object, and consideration provided by § 1213. Were it to come under the orbit of application of § 1348, it would be tainted with a juridical defect which gives rise only to an action of

relative nullity, which may be cured by ratification and prescription.  See *Oxíos* v. *Registrar, supra,* at 407–10.

The mortgage contract contested herein was executed on September 3, 1929.  It was recorded in the Registry of Property.  It was assigned to Agapito Vázquez in August, 1930; its conveyance to codefendant Orraca Martínez was made by deed of December 14, 1930.  Both assignments were also recorded.  The action of nullity was brought on April 28, 1952, more than 22 years after the mortgage credit was constituted.

Time and again this Court has expressed its opinion on the legal problem involved herein, although none of the cases which we have considered involved the validity of a mortgage contract.  On several occasions we have held that contracts executed in contravention of the prohibition established by § 1348, subds. 1, 2, and 3, are not nonexistent or wholly void but voidable, and that an action to avoid them prescribes at the end of four years.[10]  We have also held that when the act or contract, besides contravening the prohibition contained in that section, is repugnant to morale or public order, such act or contract should not be sanctioned as a lawful source of rights, for the intendment of the law is to sanction lawful transactions and to insure the proper performance of contracts, but in no manner to aid those who in pursuit of their purposes assume attitudes contrary to their own previously contracted obligations.[11]

We must agree with the trial judge that the complaint does not state facts sufficient to constitute a cause of action, and that, *assuming* that it did, the cause of action had prescribed at the date the action was brought.  The judgment appealed from will be affirmed.

---

[10] *Ledesma et al.* v. *Agrait et al.*, 19 P.R.R. 541, 549; *Álvarez* v. *Riera*, 20 P.R.R. 308, 310; *Silva Brothers & Co.* v. *Registrar of San Juan*, 28 P.R.R. 164, 168.

[11] *Swiggett* v. *Colmore et al.*, 30 P.R.R. 158, 167.